IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **KYVANI OCASIO-RUIZ**, | |
| Petitioner, | **Civil No.**: 17-1523 (DRD) |
| v. | Related to Criminal Case Nos. 12-245 |
| **UNITED STATES OF AMERICA**, | |
| Respondent. | |

## OPINION AND ORDER

Pending before the Court is Petitioner's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* ("*Motion to Vacate*"). Civil Case No. 17-1523, at Docket No. 1. Said *Motion* was supplemented with a *Brief in Support of Petitioner's Section 2255 Motion. See* Docket No 6. After thoroughly analyzing Petitioner's numerous contentions and the Government's responses in opposition, the Court hereby **DENIES** the *Motion to Vacate*.

### I.   Relevant Procedural Background

On March 28, 2012 a federal grand jury returned a four count *Indictment* against Petitioner -and other Codefendants- for the following: conspiracy to take a motor vehicle with intent to cause death or serious bodily injury, in violation of 18 U.S.C. §§ 371 and 2119(3) ("Count One"); aiding and abetting in a carjacking resulting in death, in violation of 18 U.S.C. §§ 2 and 2119(3) ("Count Two"); aiding and abetting in the use of a firearm during and in relation to a "crime of violence" (*i.e.*, carjacking), in violation of 18 U.S.C. §§ 2 and 924(c) (1)(A)(iii) ("Count Three"); aiding and abetting in the carry of a firearm causing death during a "crime of violence", in violation of 18 U.S.C. §§ 2 and 924(j) ("Count Four"). *See* Criminal Case No. 12-245, Docket No. 3.

After a five-day trial, on November 30, 2012, the Jury entered a *Verdict* finding Petitioner guilty as to all Counts. *See* Criminal Case No. 12-245, Docket No. 99. After the corresponding Sentencing Hearing, on May 8, 2013, the Court entered a *Judgment* sentencing Petitioner to life imprisonment as to Counts One, Two and Four. *See* Criminal Case No. 12-245, Docket No. 99 at 2. Furthermore, the Court imposed an additional 120 months of imprisonment as to Count Three, to be served consecutively. *Id.*

Afterwards, Petitioner filed a *Notice of Appeal* before the First Circuit. *See* Criminal Case No. 12-245, Docket No. 175. Eventually, the First Circuit issued a *Judgment* reversing the sentence and vacating the District Court's *Judgment* and remanded the case for further proceedings. *See* United States v. Ocasio-Ruiz, 779 F.3d 43, 45 (1st Cir. 2015).[1]

On June 10, 2015, the Court held a Change of Plea Hearing as to Petitioner. There, the Court accepted Petitioner's C-Type *Plea Agreement* which was executed on that same date. *See* Criminal Case No. 12-245, Docket Nos. 310 and 311.[2] Pursuant to the *Plea Agreement*, Petitioner pleaded guilty to Count Four of the *Indictment*.[3] Petitioner accepted that said Count carried an 84-

---

[1] In essence, the First Circuit concluded that by excluding the testimony of Petitioner's mother, the District Court committed an error that warranted reversal. *See* Criminal Case No. 12-245, Docket No. 266.

[2] The *Plea Agreement* constituted a C-Type plea, pursuant to Rule 11 (c)(1)(C) of the Federal Rules of Criminal Procedure. Fed.R.Crim.P. 11(c)(1)(C). This type of plea binds "the district court [as to the agreed sentence] once the court accepted the plea agreement." United States v. Cole, 412 F. App'x 320, 320 (1st Cir. 2011); *see*, *also*, United States v. Arroyo-Blas, 783 F.3d 361, 363 (1st Cir. 2015). Should the Court reject the plea agreement, then defendant must be allowed "the opportunity to change his plea to not guilty." Perocier-Morales v. United States, 887 F. Supp. 2d 399, 402 (D.P.R. 2012).

[3] Specifically, Count Four reads:

> On or about August 17, 2007, in the District of Puerto Rico and within the jurisdiction of this Court [Petitioner and other Codefendants], aiding and abetting each other, in the course of the violation of Title 18, United States Code, Section 924 (c), **as set forth in Count Three, did knowingly, willfully and intentionally cause the death of a person through the use of a firearm, which killing was a murder as defined in Title 18, United States Code, Section 1111**, in that the defendants unlawfully and with malice aforethought during the preparation and attempted perpetration of a robbery did willfully, deliberately, maliciously and with premeditation murder a human being, to wit, Joseph A. Seymour, in violation of Title 18, United States Code, Sections 2 and 924 (j).

Criminal Case No. 12-245, Docket No. 3 (emphasis provided).

2

month statutory minimum and a maximum of life imprisonment. *Id*. at 2. Furthermore, pursuant
to Rule 11 (c)(1)(C), Petitioner agreed that if the Court accepted his *Plea Agreement*, he would
face a sentence "to a term of imprisonment between twenty (20) and twenty-five (25) years". *Id*.
at 3.[4] Finally, the Court notes that Defendant represented that he was satisfied with his counsel and
asserted that she had rendered effective legal assistance. *Id*. at 5.[5]

On July 7, 2015, the Court entered a *Judgment* against Petitioner where he was sentenced
to 25 years of imprisonment. *See* Criminal Case No. 12-245, Docket No. 328. Still unsatisfied,
Petitioner filed a *Notice of Appeal* as to said *Judgment*. *See* Criminal Case No. 12-245, Docket No.
331. Eventually, on August 11, 2016, the First Circuit entered a *Judgment* affirming Petitioner's
sentence; specifically, the First Circuit stated the following:

> Appellant Kyvani Ocasio-Ruiz ("Ocasio-Ruiz") appeals his sentence. Ocasio-Ruiz
> signed a plea agreement, which included a waiver of appeal if the court sentenced
> him according to the agreement's recommendation of a sentence between 20 and
> 25 years in prison. **A review of the record, including the written plea agreement
> and plea colloquy transcript, demonstrates that the district court neither erred
> nor abused its discretion in imposing the sentence of 25 years**. See United States
> v. Davila-Gonzalez, 595 F.3d 42, 47 (1st Cir. 2010); United States v. Martin, 520
> F.3d 87, 92 (1st Cir. 2008). Accordingly, Ocasio-Ruiz's sentence is affirmed.

*See* Criminal Case No. 12-245, Docket No. 367.[6] (emphasis provided).

---

[4] The Government stated in the *Plea Agreement* that it would recommend a sentence of 25 years of imprisonment and
Petitioner would be permitted to argue for a variant sentence of 20 years of imprisonment. *See* Criminal Case No. 12-
245, Docket No. 311 at 4.

[5] Petitioner reiterated his satisfaction with his legal representation during the Change of Plea Hearing. *See* Criminal
Case No. 12-245, Docket No. 349 at 5.

[6] It is also worth noting that the First Circuit considered Petitioner's Appeal even though he explicitly renounced his
right to appeal through the *Plea Agreement. See* Criminal Case No. 12-245, Docket No. 311 ("The defendant
knowingly and voluntarily waives the right to appeal the judgment and sentence in this case provided that the
defendant is sentenced to a term of imprisonment of no less that twenty (20) years and no more that twenty-five (25)
years of imprisonment.")

## II.   <u>Underlying Stipulated Facts of Criminal Case No. 12-245</u>

As previously stated, Petitioner executed a *Plea Agreement* which included a set of stipulated facts pertaining to the underlying criminal case. *See* Criminal Case No. 12-245, Docket No. 311. The Court finds it pertinent to reproduce them here.

1. On August 17, 2007, Petitioner planned to locate and kill JAS, a male adult, because he believed JAS was providing information about drug trafficking activities to a rival organization. *See* Criminal Case No. 12-254, Docket No. 311 at 9.

2. Petitioner boarded a Dodge Ram pickup truck and drove to the residence of JAS. JAS was not home; therefore, Petitioner waited for him. As JAS approached in his Nissan Stanza, a vehicle that had been shipped in interstate foreign commerce, Petitioner blocked his path. Petitioner dismounted the truck and drew his weapon. Petitioner forcibly removed JAS from his vehicle with the intent to cause him death or serious bodily injury. Petitioner brought JAS to the "Los Nunez" ward where he interrogated him. *Id*.

3. Petitioner drove to an isolated area in the La Gloria ward in the "Los Leges" sector. JAS was then brought outside the vehicle and placed on the ground. Petitioner shot and killed JAS with different weapons, including a .9mm caliber pistols, a .40mm caliber pistol and an AK-47-type rifle. Petitioner admitted that a firearm was used to cause the death of JAS during and in relation to an armed carjacking. Finally, Petitioner admitted that the murder of JAS was a premeditated, unlawful killing with malice afterthought. *Id*.

On the other hand, it's important to note that aforementioned facts that where stipulated in the *Plea Agreement* were read to Petitioner by the Sentencing Court during his Change of Plea Hearing. See Criminal Case No. 12-245, Docket No. 349 at 27-28.[7]

---

[7] During the Change of Plea Hearing the Court went through the referenced facts and Petitioner reiterated his acceptance. *See* Criminal Case No. 12-245, Docket No. 349 at 27-28.

### III.   Parties' Positions as to Arguments Raised in *Motion to Vacate*

As previously stated, Petitioner first contends that his 25-year sentence of imprisonment is "unreasonable and disproportionate" in violation of the Eight Amendment. *See* Civil Case No. 17-1523, Docket No. 1-1 at 2-7. In an attempt to support his argument, Petitioner states that

> [u]pon remand this Honorable Court and the United States Attorney's office informed the petitioner that IF he did not come to an agreement with the United States Attorney that he would be walking out of Court with the same life sentence. This statement in and of itself was a threat, and because of that statement by intimidation petitioner entered into a Rule 11 (c) plea with a recommendation of 20-25 years imprisonment.

*Id*. at 5. Further, "Petitioner submits that Defense Counsel failed to argue any mitigating factors or object to the Sentencing Court's use of material 'testimony' which was used during trial". *Id*. Finally, Petitioner avers that "the Sentence which was determined by the Court was determined based solely upon the impact made by the graphic photos of the deceased victim." *Id*. at 6. To that end, Petitioner reasons that, pursuant to 18 U.S.C. § 3553 (a), the sentence to be imposed should not consider the "feelings, thoughts, or impact" of the Sentencing Court. That is, "Petitioner submits that in a Post-Booker regime, a sentence must be fashioned based upon reliable information not based upon feeling, thoughts, or impact made upon a Sentencing judge". *Id*. at 7.

As to this matter, the Government first contends that Petitioner "points to no specific language or instance where the Court or the United States asserted that he would receive a life sentence if he did not accept a plea agreement". Civil Case No. 17-1523, Docket 7 at 4. Further, the Government suggest that Petitioner's argument might relate to comments made by the Court during the Sentencing Hearing. Criminal Case No. 12-245, Docket No. 350 at 15 ("THE COURT: No. Had there been no plea, he would have walked out with a life sentence again. Believe me. No question about it."). However, the Government reasons that "[b]ecause Ocasio-Ruiz had already signed the plea agreement at the time that the Court made this statement, the statement could not

have induced him to accept the plea agreement. Moreover, at the time of the change of plea hearing, Ocasio-Ruiz said that no one induced or coerced him to plead guilty, but rather that his plea was entered voluntarily." *Id*. at 5.

On the other hand, the Government avers that, on appeal, the First Circuit already discarded Petitioner's argument as to the "unreasonableness" of the imposed sentence. Consequently, the Government argues that Petitioner "is not entitled to relitigate these issues on collateral review". *Id*. at 6. Furthermore, the Government contends that Petitioner's claim are also substantively deficient. Hence, in essence, the Government reasons that Petitioner's sentence of 25-years was proportional to the crime he was sentenced for and that, contrary to Petitioner's contentions, the District Judge Fusté did not determine his sentence solely on the personal impact the graphic murder photos had on the Judge, rather it consider various sentencing factors pursuant to 18 U.S.C. § 3553 (a). *Id*. at 6-10

Second, Petitioner submits that his guilty plea, in violation of his due process, was "induced" based upon his legal representative's purported "faulty and erroneous" legal advice. Specifically, Petitioner contends that he was induced to "[admit] that he kidnapped and murdered Joseph A. Seymour in exchange for a recommendation of a sentence within the Sentencing Guideline range of 20-25 years of imprisonment". *See* Civil Case No. 17-1523, Docket No. 1-1 at 7-8. Petitioner explains that he was originally charged and convicted of "only" aiding and abetting in Counts Two, Three and Four. However, as a result of his acceptance of the *Plea Agreement*, Petitioner plead guilty "as if he actually committed the offenses himself". *Id*. at 8. Consequently, "Petitioner submits that because he was originally charged under the federal conspiracy statute, which does not itself provide for parallel sentencing, he should not have been sentenced to more

than five (5) years in prison". *Id*. at 9 (emphasis omitted). Further, Petitioner contends that his conviction violated the Double Jeopardy clause. *Id*.

Considering the aforesaid, Petitioner concludes "that because of Counsels faulty and Erroneously Legal advice he was induced into pleading guilty to a 20-25 year term of imprisonment when in fact he could not have received by a maximum of FIVE (5) YEARS because he was only charged with Conspiracy to commit and Aiding and Abetting the Conspiracy not the actual substantive offenses." *Id*. at 10. "Here, had the petitioner been accurately advised of the potential sentence under the 'Aiding and Abetting' offense he would not have plead guilty to the 20-25 year sentence wi[ch] was erroneously offered in the first place, and would have insisted on proceeding to trial to preserve his right". *Id*. at 11.[8]

In opposition, the Government argues that Petitioner "plead guilty to aiding and abetting, he cannot claim that his counsel erroneously advised him to plead guilty to a different offense." Civil Case No. 17-1523, Docket No. 7 at 12. On the other hand, the Government contends that Petitioner's argument as to the maximum sentencing restrictions pertaining to Count One -general conspiracy statute 18 U.S.C. § 371- are inapposite since he was sentenced exclusively as to Count Four for violations to 18 U.S.C. § 924 (j) which "expressly states a statutory maximum of death or life imprisonment." *Id*. at 12; *see*, *also*, 18 U.S.C. § 924 (j)(1).

Furthermore, the Government avers that reducing Petitioner's exposure of life imprisonment to a sentence within the range of 20-25 years was "precisely the result of effective representation by defense counsel." *Id*. at 13.[9] Also, the Government notes that Petitioner "makes

---

[8] But defendant forgets that there were other Counts including the one when he accepted, Count Four.
[9] Defendant further discards that he changed a life sentence for a 25-year sentence where he can enjoy the benefit of potentially obtaining a 15% credit for good conduct; possibility that is certainly unavailable if he was subject to life imprisonment.

no argument that he had any reason to believe that declining the plea offer, which eliminated the possibility of a sentence of life imprisonment, and proceeding to trial would have yielded a more favorable outcome. This [Petitioner] is unable to establish prejudice pursuant to the *Strickland* test." *Id*. at 14.

Finally, as to Petitioner's Double Jeopardy claims, the Government contests that it holds no water since Petitioner's "original conviction for both counts [18 U.S.C. § 924 (c) and 924 (j)] was vacated on appeal and on remand he only plead guilty to the § 924 (j) charge (Count 4) while the § 924 (c) charge (Count 3) was dismissed". *Id*.

### IV.   Parties' Positions as to Supplemental Brief

The Federal Public Defender's Office filed a *Supplemental Brief in Support of Petitioner's Section 2255 Motion*. *See* Civil Case No. 17-1523 Docket No. 6. In essence, Petitioner contends that his "conviction on Count [Four] for aiding and abetting in the use of a firearm causing death during a 'crime of violence,' must be vacated because the federal carjacking offense underlying the conviction categorically fails to qualify as a 'crime of violence' within the meaning of Section 924(c)(3)(A)'s 'force clause' and Section 924(c)(3)(B)'s 'residual clause' is unconstitutionally vague following *Johnson II*. Thus, the elements of the offense cannot be met." *Id*. at 2. Specifically, Petitioner argued that "[t]he federal carjacking statute does not satisfy Section 924(c)(3)(A)'s force clause because (1) the offense can be committed by intimidation, which does not require violent force, (2) death resulting does not require violent force as an element, (3) aiding and abetting does not require the use of violent force, and (4) the statute is indivisible, meaning we must presume the most innocent conduct proscribed by the federal carjacking statute formed the basis of conviction." *Id*. at 11.

In its relevant part, the Government argues that a carjacking is a "crime of violence" under the force clause of 18 U.S.C. § 924 (c)(3)(A). To that end, the Government reasons that "whether

committed by force and violence or by intimidation, the commission of a carjacking categorically requires the use, attempted use, or threatened use of force capable of causing pain or injury". Docket No. 8.

## V.   Legal Standard

### a.   Motions Under 28 U.S.C. § 2255 (generally)

Pursuant to 28 U.S.C. § 2255, a federal prisoner may petition to vacate, set aside, or correct his or her sentence by showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." However, "[r]elief under [§ 2255] is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." Blake v. United States, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted); see, also, Knight v. United States, 37 F.3d 769, 772-73 (1st Cir. 1994).

### b.   Ineffective Assistance of Counsel

In order to succeed on a claim of ineffective assistance of counsel under 28 U.S.C. § 2255, Petitioner has the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *See* Padilla v. Kentucky, 559 U.S. 356, 366 (2010) (*citing* Strickland v. Washington, 466, U.S. 668, 674 (1984)); Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996); Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994); López-Nieves v. United States, 917 F.2d 645, 648 (1st Cir. 1990) (*citing* Strickland, 466 U.S. at 687). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland

v. Washington, 466 U.S. 668, 687–88 (1984). However, it has been recognized that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

The Court considers worthy to note that *Strickland* also applies to representations outside of the trial setting, which would include plea bargains, sentence and appeal. *See* Missouri v. Frye, 132 S. Ct. 1399, 1408-10, 182 L. Ed. 2d 379 (2012); Lafler v. Cooper, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012); Hill v. Lockhart, 474 U.S. 52, 57 (1985); Bonneau v. United States, 961 F.2d 17, 20-22 (1st Cir. 1992); United States v. Tajeddini, 945 F.2d 458, 468-69 (1st Cir. 1991)(abrogated on other grounds by Roe v. Flores-Ortega, 528 U.S. 470 (2000)); Panzardi-Álvarez v. United States, 879 F.2d 975, 982 (1st Cir. 1989); López-Torres v. United States, 876 F.2d 4, 5 (1st Cir. 1989) (abrogated on other grounds by Bonneau v. United States, 961 F.2d 17 (1st Cir. 1992)).

## VI.   Analysis

### a.  Petitioner's Eight Amendment Argument.

The Court determines that it is unnecessary to consider Petitioner's substantive Eight Amendment arguments. As previously stated, after the Court entered the second *Judgment* against Petitioner, he opportunely appealed his sentence before the First Circuit. However, the First Circuit returned a *Judgment* where it affirmed said sentence. In fact, the First Circuit unequivocally stated that "[a] review of the record, including the written plea agreement and plea colloquy transcript, demonstrates that the district court neither erred nor abused its discretion in imposing the sentence of 25 years." *See* Criminal Case No. 12-245, Docket No. 367.

As the Government correctly avers, the Court finds that Petitioner's argument constitutes an attempt to re-litigate issues that have already been raised and adjudge through direct appeal; the First Circuit -as well as this District Court- has deemed this practice as impermissible. See, e.g., Singleton v. United States, 26 F.3d 233, 240 (1st Cir.1994) (citations omitted) ("Section 2255

motions may not be used as vehicles to re-litigate issues that were raised on appeal absent extraordinary circumstances, such as intervening change of law or newly discovered evidence."); Conley v. United States, 323 F.3d 7, 22 (1st Cir. 2003) ("Claims that previously have been addressed on direct review, however, may not be readjudicated collaterally under § 2255 absent equitable considerations, such as actual innocence or cause and prejudice."); Bauzo-Santiago v. United States, 435 F. Supp. 3d 357, 377 (D.P.R. 2020); De-La-Cruz v. United States, 865 F. Supp. 2d 156, 161 (D.P.R. 2012); Alicea-Torres v. United States, 455 F. Supp. 2d 32, 54 (D.P.R. 2006).

It is therefore unnecessary to consider Petitioner's additional contentions as to this matter. Therefore, Petitioner's *Motion to Vacate* fails on these grounds.

### b. Petitioner's Ineffective Assistance of Counsel Argument.

Petitioner contends that his attorney provided inadequate representation; the Court disagrees. First, the record shows that Petitioner informed the Sentencing Court that he was satisfied with his legal representation on various occasions. To that end, the Court notes that, the *Plea Agreement* includes the following representation: "Defendant represents to the Court that he is satisfied with counsel, Anita Hill Adames and asserts that counsel has rendered effective legal assistance". *See* Criminal Case No. 12-245, Docket No. 311 at 5. Furthermore, during the Change of Plea Hearing, the Sentencing Court inquired whether Petitioner was satisfied with the work of his attorney; Petitioner responded affirmatively. *See* Criminal Case No. 12-245, Docket No. 349 at 6, lines 14-16; *see*, *also*, *id*. at 21 lines 3-8 ("THE COURT: So I gather that you're pleading because the case was remanded from the Court of Appeals for a new trial. And you have reached a Plea Agreement to your satisfaction that the government and your lawyer have approved. And that's the reason why you're pleading? THE DEFENDANT: Yes.").

On the other hand, Petitioner highlights that he was "originally charged and convicted of "ONLY" AIDING and ABETTING in these Counts: Two, Three, and Four of the indictment".

Civil Case No. 17-1523, Docket No. 1-1, at 8 (emphasis in the original). Relying on this assertion, Petitioner contends that, as a result of his counsel's "misrepresentations" he "plead guilty as if he actually committed the offenses [that is the carjacking and subsequent murder] himself". *Id.* However, Petitioner did not plead guilty to said crimes. Instead, as explicitly stated in the *Plea Agreement*, Petitioner plead guilty to the charges contained in Count Four of the *Indictment* which were related to violations to 18 U.S.C. §§ 2 and 924 (j). To that end, the Court highlights the following exchange held during the Change of Plea Hearing:

> THE COURT: So you are clear now as to what you're pleading guilty to?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. No doubt as to what you're pleading guilty to, correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay.
>
> MS. HILL: Let me make sure, your Honor.
>
> (Discussion between the defendant and Ms. Hill)
>
> THE COURT: You have no doubt?
>
> THE DEFENDANT: No.
>
> THE COURT: Okay. Counsel, you don't think he has a doubt; am I right?
>
> MS. HILL: Hmm?
>
> THE COURT: You don't think he has a doubt?
>
> MS. HILL: No, I don't think he has a doubt, because there's a cross reference to the murder.
>
> THE COURT: But the truth is he has to understand there is a cross reference to murder, as I have explained to him.
>
> MS. HILL: And I have explained that. But since the killing comes up so much, he thinks he's pleading guilty to the murder count.

THE COURT: He's pleading to the firearms count, sir, you're pleading to the firearms count, but the firearm doesn't' mean anything standing alone. The firearm is the firearm that was used to kill Joseph Seymore after he was carjacked, murder him. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: No doubt?

THE DEFENDANT: No.

Criminal Case No. 12-245, Docket No. 349 at 8-9.[10] Furthermore, the Sentencing Court explicitly explained to Petitioner that the underlying carjacking and murder where not solely committed by him. As to this matter, during the Change of Plea Hearing the following exchange ensued:

THE COURT:  Ms. Hill?

MS. HILL:  He's just concerned with the Court's –

THE COURT:  You have to raise your voice.  I'm sorry.

MS. HILL:  Okay.  He's concerned with the Court's references to the fact he acted with others.  And I'm explaining to him.

THE COURT:  He acted with others.

---

[10] Later during the Change of Plea Hearing the Sentencing Court discussed the *Plea Agreement*, *in extenso*, and made sure -once again- that Petitioner understood what he was pleading guilty to.

THE COURT: So I gather that you're pleading because the case was remanded from the Court of Appeals for a new trial. And you have reached a Plea Agreement to your satisfaction that the government and your lawyer have approved. And that's the reason why you're pleading?

HE DEFENDANT:  Yes.

THE COURT:  Okay.  Let's discuss your Plea Agreement now.  Your Plea Agreement I have before me, you signed it.  It says that you are pleading guilty to Count IV, which is the count that we have discussed back and forth more than four or five times already.  It's the gun count.  That is associated with the kidnapping, carjacking, killing of Joseph Seymour.  Do you understand that?

THE DEFENDANT:  Yes.

Criminal Case No. 12-245, Docket No. 349 at 21.

MS. HILL:  Right.  I'm saying there's a conspiracy count.  There's an aiding and abetting count.  There has to be others.  But he's just concerned about your reference to others.  And I said that's just the way the case is charged.

THE COURT:  You did not do this alone.  You acted with others.  Others did something.  You did something.  I don't care the names of others, but others were involved along with you. Do you accept that, sir?

THE DEFENDANT: (Gesturing.)

(Discussion between defendant and Ms. Hill.)

THE COURT:  Do you accept that, sir?

THE DEFENDANT:  Yes.  Yes.

THE COURT:  Okay.  So the government also has to prove that indeed Joseph Seymour was killed by gunfire.  And that the firearm involved here was the firearm that was used to kill him.  And that it was an operable firearm, a real thing, not a toy.  A real gun, capable of firing ammunition. Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  The government also has to prove the different particulars that I mentioned.  Even though you're pleading guilty to the firearms count, the government has to prove that there was malice in doing this, that there was planning in doing this, that it was done willfully and deliberately to basically kidnap, carjack, and kill Joseph Seymour.
Do you understand that, sir?

THE DEFENDANT:  Yes.

*Id*. at 12-13. Therefore, as correctly contested by the Government, Petitioner "cannot claim that his counsel erroneously advised him to plead guilty to" an offense that he did not plead guilty to. Docket No. 7 at 12.[11]

---

[11] Petitioner also contended that "the general conspiracy statute under which he was originally charged carried a Five(5) year maximum sentence". Consequently, he suggests that he could not have been sentenced to more than five (5) years. However, Petitioner ignores that his the "general conspiracy statute under which he was originally charges" corresponded to Count One of the *Indictment* and, pursuant to the *Plea Agreement*, said Count was dismissed. Again, Petitioner ignores that he plead guilty to Count Four, under 18 U.S.C. § 924 (j), which carried a statutory maximum sentence of life imprisonment, but was reduced to a sentence of twenty to twenty five years.

Furthermore, Petitioner's contention seems to conveniently ignore the benefits he derived from his *Plea Agreement*. Petitioner had already been sentenced to life imprisonment for the counts included in the *Indictment* and, although the Fist Circuit vacated said sentence, he was potentially facing a similar sentence a second time around.[12] Petitioner's *Plea Agreement* effectively reduced his maximum sentence exposure from life imprisonment to 25 years imprisonment; that is considerable, to say the least.  The Sentencing Court even commended Petitioner's legal counsels' work in securing a *Plea Agreement* that was significantly more beneficial to Petitioner than the risk he was facing. *See* Criminal Case No. 12-254, Docket No. 350 at 17 (THE COURT: "I don't think. I don't think that this case should go for less than 25. You did a fantastic job securing a binding plea, which I am accepting, for 20 to 25 years, but I just cannot in good conscience, with the facts of this case, which involved a kidnapping and this kind of shooting, do 20 years. I just can't. I'm sorry. [….] This was a brutal, brutal murder. He should count his blessings that he had a good lawyer who was able to secure that plea for him. Had he tried this case again, he would have

---

[12] As previously stated, during the Change of Plea Hearing the Sentencing Court made sure Petitioner was well aware of the penalties that could be imposed with regards to 18 U.S.C. § 924 (j). To that end, the Sentencing Court stated the following:

> THE COURT:  Okay. Very well. So the penalty for the commission of this kind of offense is a term of imprisonment, up to life imprisonment. You agree[d] and you know that there is a statutory mandatory minimum term of imprisonment of 84 months in the case, because the firearm in question was brandished, was basically pulled out and brandished. Brandishing is before you even fire. Do you understand that?
>
> THE DEFENDANT: (Nodding head up and down.)
>
> THE COURT: And that carries a statutory mandatory minimum of seven years, 84 months.
>
> Do you understand that?
>
> THE DEFENDANT: Yes.
>
> Criminal Case No. 12-245, Docket No. 349 at 16.

been convicted. I don't think he would have walked out with 25 years. I believe me. No way. It was a brutal murder.").

On the other hand, contrary to Petitioner's contention, the record reveals that his legal representative did in fact argue in favor of the lower end of the agreed upon sentence. *See* Criminal Case 12-245, Docket No. 350 at 4. (PETITIONER'S COUNSEL: "However, I just want to briefly go over certain things, because obviously I'm here to argue for the lower end, which is 20."). In order to justify said petition, first, Petitioner's counsel requested the Court to question the weight of the evidence in the Government's favor, even if Petitioner accepted the statement of uncontested facts included with the *Plea Agreement*. To that end, Petitioner's counsel suggested that, if the case were to return to trial, Petitioner would have a "fighting chance" to contest the two witness testimonies in favor of the Government. *Id*. at 5. On the other hand, Petitioner's counsel brought forth several mitigating factors in favor of Petitioner; that is: he had not history of arrest or convictions, he was a family man, he had a difficult past, that -at the time- he had already served three years of imprisonment and that there was potential rehabilitation considering his good conduct during imprisonment. *Id*. at 6-7. Finally, the Court notes that Petitioner's legal representative even brought to the attention of the Court other cases for similar crimes where a they had accomplished a lower plea agreement in order to put into perspective the sentencing ranges for the instant case. *Id*.

Considering the above, the Court finds that the *Strickland* standards are not met in the instant case. Petitioner's legal counsel's performance did not fall below an objective standard of reasonableness. Furthermore, the Court finds that Petitioner's counsel did not commit an error that, if absent, would have produced a different result for the proceedings. Consequently, Petitioner's counsel did not provide ineffective assistance; Petitioners *Motion to Vacate* fails on said grounds.

### a.   **Petitioner's Double Jeopardy Arguments**

Petitioner contends that that his conviction violated the Double Jeopardy clause since 18 U.S.C. § 924(c) is a lesser included offense of 18 U.S.C. § 924 (j). Petitioner is correct in asserting that 18 U.S.C. § 924(c) is a lesser included offense of Section 924 (j).[13] However, as correctly pointed out by the Government, Petitioner did not plead guilty for both crimes, was not convicted for both crimes nor received cumulative punishment for the lesser included offense. That is, Petitioner only plead guilty -and was sentenced- to Count Four, which referenced a violation to 18 U.S.C. 924 (j).[14] Consequently, the Court finds that no double jeopardy violation is present. Petitioners *Motion to Vacate* also fails on said grounds.

### b.   **Petitioner's *Johnson* Argument**

After Petitioner filed its *Motion to Vacate* -and the government filed its corresponding *Response*- the Supreme Court ruled that the residual clause contained in Section 924 (c) is unconstitutionally vague. *See* United States v. Davis, 139 S.Ct. 2319, 2336 (2019). Therefore, the Court must determine whether the underlying criminal offense -*i.e.* carjacking resulting in death-related to Count Four qualifies as a "crime of violence" under the force clause of Section 924 (c) (3) (A).

Pursuant to 18 U.S.C. § 924(c), it is a crime for "any person, who during and in relation to any crime of violence. . . use[] or carr[y] a firearm, or who in furtherance of any such crime possesses a firearm. . . ." 18 U.S.C. § 924(c)(1)(A). Further § 924(c) defines a crime of violence under the force clause as "an offense that is a felony and has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The First Circuit further explained that:

---

[13] *See* United States v. García-Ortiz, 657 F.3d 25, 28 (1st Cir. 2011).
[14] Count Three, which addressed Petitioner's violation to 18 U.S.C. § 924 (c), was dismissed.

To assess whether a predicate crime qualifies as a 'crime of violence' under the force clause of § 924(c), 'we apply a categorical approach. That means we consider the elements of the crime of conviction, not the facts of how it was committed, and assess whether violent force is an element of the crime.

United States v. Cruz-Rivera, 904 F.3d 63, 66 (1st Cir. 2018) (*quoting* United States v. Taylor, 848 F.3d 476, 491 (1st Cir.), *cert. denied*, ____ U.S. ____, 137 S. Ct. 2255, 198 L.Ed.2d 689 (2017).

The federal carjacking statute provides that "[w]hoever, *with the intent to cause death or serious bodily harm* takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall . . . be fined under this title or imprisoned not more than 15 years or both." 18 U.S.C. §§ 2119, 2119(1) (Emphasis ours). Thus, the elements of the offense of carjacking under § 2119 require that the Government prove that the defendant committed said offense "with the intent of causing death or serious bodily harm". *Id.* Petitioner contends that the aforementioned statute does not satisfy § 924(c)(3)(A)'s force clause because (1) the offense can be committed by intimidation, which does not require violent force; (2) death resulting does not require violent physical force; (3) aiding and abetting does not require the use of violent force;[15]

---

[15] Albeit in the context of different offenses, the First Circuit has determined that "aiding and abetting the commission of a crime of violence is a crime of violence itself." *See*, *e.g.*, United States v. Garcia-Ortiz, 904 F.3d 102, 109 (1st Cir. 2018), cert. denied, 139 S. Ct. 1208, 203 L. Ed. 2d 232 (2019) ("[W]e therefore hold that because the offense of Hobbs Act robbery has as an element the use or threatened use of physical force capable of causing injury to a person or property, a conviction for Hobbs Act robbery categorically constitutes a "crime of violence" under section 924(c)'s force clause."); United States v. Rodriguez-Torres, 939 F.3d 16, 43 (1st Cir. 2019) ("[f]ederal law … says that a person who aids or abets the commission of a federal crime 'is punishable as a principal."); United States v. Mitchell, 23 F.3d 1, 2–3 (1st Cir. 1994). The Court finds that the same reasoning applies in the instant case; consequently, the fact that Petitioner was charged as an "aider an abettor" does nothing to change the underlying crime's category of "crime of violence". *See*, e.g., Rojas-Tapia v. United States, 2020 WL 2096153 (D.P.R. May 1, 2020); Ortiz-Brooks v. United States, No. CR 12-560 (DRD), 2019 WL 6499443, at *3 (D.P.R. Dec. 3, 2019); Sanchez-Leon v. United States, 251 F. Supp. 3d 370, 375 (D.P.R. 2017).

and (4) the statute is indivisible, meaning we must presume the most innocent conduct proscribed by the federal carjacking statute formed the basis of the conviction. *See* Docket No. 6 at 11-15.

Herein, Petitioner plead guilty to Count Four of the *Indictment* which was predicated on a carjacking in violation of 18 U.S.C. § 2119 (3). *See* Criminal Case No. 12-245 at Docket No. 3, and 311. Considering the elements of a carjacking offense, namely, "whoever, with the intent to cause death or serious bodily harm takes a motor vehicle . . . from the person or presence of another by force and violence or by intimidation . . .", the Court is bound to conclude that violence is required as part of the offense. Most critical and determinative, the First Circuit has concluded that a carjacking offense is a crime of violence under the force clause. *See* <u>Cruz-Rivera</u>, *supra*, at 66.

Thus, consistent with the First Circuit's determination and regardless of the Supreme Court's determination in *Davis*, the Court finds it is irrelevant whether § 924(c)'s residual clause is unconstitutional as the type offense committed by the petitioner causes that the crime be considered "a crime of violence" as the federal carjacking statute contains the element of committing the crime "<u>with intent to cause death or bodily harm.</u>" 18 U.S.C. § 2119 (emphasis ours).

Accordingly, the Court need not to proceed further. The Court holds that Petitioner's underlying offense falls within the § 924(c) force clause. More importantly, the carjacking offense which has been consistently ruled as a "crime of violence" as said offense requires the "intent to cause death or serious bodily harm." *See* 18 U.S.C. § 2119; *see, also*, <u>Cruz-Rivera</u>, 905 F.3d at 66. Thus, Petitioner's Motion to Vacate fails on said grounds.

### VII.   <u>Conclusion</u>

Pursuant to the above, Petitioner's *Motions to Vacate* (Docket Nos. 1 and 6) are hereby

<u>**DENIED**</u>.

It is further ordered that no certificate of appealability be issued in the event that the

petitioner files a notice of appeal because there is no substantial showing of the denial of a

constitutional or statutory right within the meaning of 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on August 3, 2020.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge